**PAINTING INDUSTRY OF HAWAII MARKET RECOVERY FUND, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF The AIR FORCE, Defendant.**

**Civ. No. 89–00713 ACK.**

United States District Court, D. Hawaii.

May 25, 1990.

Michael A. Lilly, Green Ning Lilly & Jones, Honolulu, Hawaii, Pauline M. Sloan, San Francisco, Cal., for plaintiff.

Daniel Bent, Theodore G. Meeker, U.S. Attys. Office, Honolulu, Hawaii, Elizabeth Pugh, David Shaneyfelt, Washington, D.C., for defendant.

## ORDER PARTIALLY GRANTING AND PARTIALLY DENYING CROSS–MOTIONS FOR SUMMARY JUDGMENT

KAY, District Judge.

### I.  PROCEDURAL HISTORY

Cross-motions for summary judgment were heard before this Court on April 9, 1990.  Plaintiff filed suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel disclosure by Defendant of copies of certified payroll records of RG & B Contractors, Inc. ("RG & B"), a painting contractor on a military housing maintenance contract for the 15th Air Base Wing at Hickam Air Force Base, and for a declaratory judgment that contractor's payroll records are not exempt from disclosure.  The military housing maintenance

contract is subject to (i) the Davis Bacon Act, 48 C.F.R. §§ 22.403–1, 22.403–2; (ii) Federal Acquisition Regulations, 48 C.F.R. §§ 22.000–22.407; and, (iii) the Copeland (Anti–Kickback) Act, 18 U.S.C. § 874 and 40 U.S.C. § 276c.

The contractor payroll records contain, *inter alia,* the names, addresses, phone numbers, and social security numbers of RG & B's employees, and also their work classification, hourly rates of pay, daily hours, fringe benefits, and such deductions as union dues.

It is uncontested that Plaintiff has exhausted all its administrative remedies and that this matter is properly before this Court. This Court considers the matter *de novo, i.e.,* it owes no deference to any previous administrative ruling. Title 5 U.S.C. § 552(a)(4)(B).

## II. JURISDICTION

It is undisputed that this Court has jurisdiction to enjoin Defendant from withholding the RG & B payroll records and to order production of any RG & B records that are improperly withheld from Plaintiff. Title 5 U.S.C. § 552(a)(4)(B). This Court may also assess against the United States reasonable attorney fees and litigation costs in any case in which the complainant has substantially prevailed. Title 5 U.S.C. § 552(a)(4)(E).

Defendant argues, however, that the Court does not have jurisdiction to issue a declaratory judgment, or in essence to prospectively enjoin Defendant from refusing to disclose payroll records pertaining to future contracts with the Air Force. Defendant explicitly argues that every time Plaintiff wants to enforce the FOIA regarding the payroll records of a specific contractor that Plaintiff must bring a new action before this Court, *i.e.,* the instant action pertains only to RG & B Contracting. There is no merit to Defendant's argument. The United States Court of Appeals, District of Columbia Circuit, the very Circuit upon which Defendant places almost total reliance for its legal authority, has explicitly held that a district court does have jurisdiction to enter a declaratory judgment in a suit brought under the FOIA:

> The jurisdictional basis for this suit is to be found in 28 U.S.C. § 1332(a). The action arises under the FOIA and relief is sought pursuant to the Declaratory Judgement Act [28 U.S.C. § 2201], since the FOIA provides for actions requiring disclosure ... [w]e agree with the District Court that the "actual controversy" here is whether the records sought are exempt from disclosure under the FOIA, and that *Sears has a right to a declaratory judgment on this issue. Sears, Roebuck & Co. v. General Services Admin.,* 553 F.2d 1378, 1380–81 (D.C.Cir.), *cert. denied,* 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977) (emphasis added).

## III. DISCUSSION

The FOIA implemented Congress' "general philosophy of full agency disclosure." *U.S. Dept. of Justice v. Reporters Committee,* 489 U.S. 749, 109 S.Ct. 1468, 1472, 103 L.Ed.2d 774 (1989) ("Reporters Committee"). The Court of Appeals for the District of Columbia recently recognized that:

> FOIA pursues a policy of broad disclosure of governmental records to "ensure an informed citizenry, vital to the functioning of a democratic society." *Birch v. United States Postal Service,* 803 F.2d 1206, 1208–09 (D.C.Cir.1986).

It is undisputed that the FOIA requires Defendant to promptly make available to Plaintiff, upon request for public inspection and copying, the disputed payroll records unless they are exempted from disclosure by one of the FOIA's statutory exemptions. Defendant has the burden of proving that the requested information is nondisclosable pursuant to one of the FOIA's explicit exemptions. 5 U.S.C. § 552(a)(4)(B); *see also, Reporters Committee,* 109 S.Ct. at 1472. That Defendant's burden is formidable is evident from the *Birch* decision:

> The [government] agency bears the burden of setting forth "a relatively detailed justification" for assertion of an exemption, and must demonstrate to a reviewing court that records withheld are clear-

ly exempt. *Birch v. United States Postal Service*, 803 F.2d 1206, 1208–09 (D.C. Cir.1986).

Defendant claims exemption from disclosure under three statutory exemptions— Exemptions 4, 6, and 7(C).[1] Plaintiff, on the other hand, claims that Defendant has failed to meet its burden of proving that the requested payroll records are nondisclosable pursuant to any statutory exemption and, accordingly, moves this Court to enjoin Defendant from withholding the requested records. Both parties have moved for summary judgment claiming that there exist no genuine issues of material fact and that they should prevail as a matter of law.

As discussed below, Defendant's motion for summary judgment is denied as to all claimed exemptions. Plaintiff's motion is partially granted and partially denied. As to Exemption 4, Plaintiff's motion for summary judgment is denied because there exists a genuine issue of material fact. As to Exemptions 6 and 7(C), summary judgment is granted in favor of the Plaintiff, with the exception that should Plaintiff ultimately prevail as to Exemption 4, any order issued by this Court enjoining Defendant from withholding contractor payroll records shall require Defendant to edit from the requested payroll records the Social Security numbers of the subject contractor's employees.

### Summary Judgment Standard

Summary Judgment shall be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Supreme Court of the United States

has declared that Summary Judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552. The Ninth Circuit has fully adopted and implemented the *Celotex* rule:

> [I]f the nonmoving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *citing, Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

There can be no genuine issue as to any material fact where there is a complete failure of proof as to an essential element of the nonmoving party's case because all other facts are thereby rendered immaterial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

The Movant bears the initial burden of informing this Court of the basis for its motion and identifying those sections of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which the Movant believes demonstrate the absence of a genuine issue of material fact. There is, however, no requirement that the Movant support its motion with affidavits or other evidence negating the nonmoving party's claims. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

In order to withstand a motion for summary judgment, therefore,

> [T]he nonmoving party must show that there are "genuine factual issues that properly can be resolved only by a finder

---

1. Disclosure under the FOIA of payroll records of companies that have won government contracts is not a novel concept. The United States Army has stipulated in a previous action to disclosure of complete copies of all RG & B certified payroll records and also agreed to pay the plaintiff's attorney's fees and costs. *Painting Industry of Hawaii Market Recovery Fund v. United States Department of the Army*, Civil No.

88–00251 ACK (D.C.Haw. December 27, 1988) (unpublished stipulation and order). Moreover, the Air Force itself has previously provided unexpunged copies of payroll records to Plaintiff. Finally, both California and Hawaii have statutes requiring disclosure of unexpunged payroll records attendant to all state and local public projects.

of fact *because they may reasonably be resolved in favor of either party."* *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).... [I]f the factual context makes the nonmoving party's claim *implausible,* the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *California Architectural,* 818 F.2d 1466, 1468 (emphasis in original), *citing, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Rule 56(e) explicitly states that the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." It follows that the nonmoving party can withstand a properly supported motion for summary judgment only by establishing the existence of a proper jury question as to a genuine issue of material fact. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. Although the movant has the burden of showing that there is no genuine issue of fact,

> [The nonmoving party] is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict.... [he] *must present affirmative evidence* in order to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514 (emphasis added).

Regarding "materiality," the substantive law determines which facts are material:

> Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

Regarding "genuine," the nonmoving party has met his burden if he has established evidence of a material fact such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. But where such evidence is merely colorable or is not significantly probative, summary judgment

is properly granted. *Id.* at 249–50, 106 S.Ct. at 2510–11.

It is apparent that potential application of Rule 56 Summary Judgment has been substantially broadened. The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural,* 818 F.2d 1466, 1468. Moreover, the Supreme Court recently stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356.

The Supreme Court has outlined the proper form of judicial inquiry when considering the merits of a motion for summary judgment:

> [T]he judge must ask himself ... whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented. The mere scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonable find for the [nonmoving party]. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

As always, however, in evaluating the evidence submitted by both parties, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). For purposes of a motion for summary judgment, therefore, "[t]he evidence of the non-movant is to be believed." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

*Exemption 4*

■ Title 5 U.S.C. § 552(b)(4) provides in relevant part:

This section does not apply to matters that are—

(4) trade secrets and commercial or financial information obtained from a per-

son and privileged or confidential; Title 5 U.S.C. § 552(b)(4) (1976).

It is uncontested that the payrolls are financial information obtained from a person. The only contested issue, therefore, is whether the payrolls are "confidential."[2] The United States Court of Appeals for the District of Columbia has held that financial matter is "confidential" under § 552(b)(4) if disclosure is likely "to cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks and Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir.1974); *see also, Martin Marietta Aluminum, Inc. v. Administrator, General Services Administration*, 444 F.Supp. 945, 948 (C.D.Cal.1977) (applying the *National Parks* definition and holding that full disclosure of appraisers' reports would not cause substantial harm to the appraisers' competitive positions.)

Regarding application of § 552(b)(4) and the use therein of the term "confidential," the Ninth Circuit has held:

> [T]his exemption clearly condones withholding information only when it is obtained from a person outside the agency, and that person wishes the information to be kept confidential. *General Services Administration v. Benson*, 415 F.2d 878, 881 (9th Cir.1969) (quoting with approval from the district court's decision); *see also, Martin Marietta*, 444 F.Supp. at 948.

The affidavit of Steve Sitze, Pacific Operations Contracts Manager for RG & B Contractors, alleges facts in support of his conclusion that release of payroll information will substantially harm the competitive position of his company. It follows that the requirement under *General Services*, that a person outside the subject government agency must desire that the information to be kept confidential, is met by Steve Sitze's affidavit.

The affidavit of Dale E. Isaac, Contract Administrator for the 15th Air Base Wing, alleges facts in support of his conclusion that release of "any part" of a contractor's payroll under the FOIA would "substantial-

ly harm the competitive position of the contractor." Affidavit at 5.

On the other hand, the affidavit of Robert McMullan, a painting contractor operating a nationwide business with about 90% of his business involving public works projects and employing more than 350 persons, alleges facts in support of his conclusion that Steve Sitze "is incorrect in his claim that the release of a contractor's certified payroll records harms the competitive position of the submitter contractor." Affidavit at 2–3.

The question of what the data contained in the requested payroll records would mean to a competitor painting contractor is a factual issue. That the issue is material to the instant motions is clear from *National Parks* and *Martin Marietta*. That there exists a genuine dispute regarding this issue is evident from the contradicting affidavits of Dale Isaac and Steve Sitze on the one hand and Robert McMullan on the other hand. *See Sears, Roebuck and Co. v. General Services Administrator*, 553 F.2d 1378, 1382–83 (D.C.Cir.) *cert. denied*, 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977) (holding, under almost identical circumstances, that summary judgment was not appropriate).

Summary judgment regarding the issue of the application of exemption § 552(b)(4) to the instant controversy is, therefore, denied as to both parties' motions.

*Exemption 6*

■ Title 5 U.S.C. § 552(b)(6) provides in relevant part:

> This section does not apply to matters that are—

> (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. Title 5 U.S.C. § 552(b)(6) (1976).

Defendant alternatively argues that the requested payroll records are exempted from disclosure because they are personnel or "similar files," the disclosure of which

---

**2.** Defendant does not allege that the payrolls are     "privileged" under exemption 4.

would constitute a "clearly unwarranted invasion of personal privacy."

An Exemption 6 inquiry requires a three step analysis (i) identification and evaluation of the specific privacy interest implicated, (ii) identification and evaluation of the specific public interest implicated, and (iii) balancing of these two interests. *United States Dept. of Justice v. Reporters Committee*, 489 U.S. 749, 109 S.Ct. 1468, 1476–80, 103 L.Ed.2d 774 (1989) (holding that the FOIA did not require disclosure of contents of F.B.I. criminal records to the press).[3]

a.  Privacy Interest

One post-*Reporters Committee* decision, *National Ass'n of Retired Federal Emp. v. Horner*, 879 F.2d 873 (D.C.Cir.1989), held that names and addresses of retired and disabled federal employees were nondisclosable under the FOIA's Exemption 6 because no public interest whatsoever had been demonstrated in disclosure and only a modest personal privacy interest had been demonstrated against disclosure. The court concluded that the two interests, therefore, balanced in favor of non-disclosure. The appellate court, nevertheless, recognized that disclosure of names and addresses is appropriate under some circumstances despite Exemption 6.[4] The court had been presented with no public interest whatsoever to balance against the modest privacy interest:

> We have been shown no public interest in, and a modest personal privacy interest against, disclosure of the names and addresses of individuals receiving federal employee retirement benefits. We need not linger over the balance; something, even a modest privacy interest, out-

weighs nothing every time. *National Ass'n of Retired Federal Employees*, 879 F.2d at 879.

It follows, therefore, that if the court had been presented with more than a modest public interest, it would have decided in favor of disclosure of the names and addresses.

Another post-*Reporters Committee* decision, *Retired Officers Ass'n v. Dept. of Navy*, 716 F.Supp. 662 (D.D.C.1989), held that any minimal privacy interest that the retired officers might have in their names and home addresses was outweighed by the public interest of disclosure to the Retired Officers Association. The primary public interests supported by disclosure were the Association's mission of supporting a strong national defense and its actions taken to protect the earned entitlements of service personnel and their families.

The Association acquires members for its organization primarily through mail solicitation of retired military officers. The court held "[w]hen the relatively minor privacy interest at stake is balanced against the public interest in disclosure, the scale tilts in favor of disclosure." *Id.* at 667. In agreement with the Circuit Court in *National Ass'n of Retired Federal Emp. v. Horner*, therefore, the district court in *Retired Officers Ass'n v. Dept. of Navy*, concluded that there existed only a minimal privacy interest in protecting one's name and home address.

Defendant has presented this Court with no evidence that disclosure of names and addresses of the employees of public works painting contractors involves any more than the modest privacy interests found in

---

**3.**  Although *Reporters Committee* is a landmark case in the area of analysis of FOIA exemptions implicating privacy rights, the decision dealt with the 7(C) Exemption and not Exemption 6. Accordingly, *Reporters Committee* is cautiously applied to an analysis of Exemption 6 because Exemption 6 requires a "clearly unwarranted invasion of personal privacy" while Exemption 7(C) requires only an "unwarranted invasion of personal privacy." That absence of the term "clearly" renders Exemption 7(C)'s privacy language broader than the comparable language in

Exemption 6 was explicitly stated in the Court's decision. *Reporters Committee*, 109 S.Ct. at 1472.

**4.**  "[T]he disclosure of names and addresses is not inherently and always a significant threat to the privacy of those listed; whether it is a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." *National Ass'n of Retired Federal Employees*, 879 F.2d at 877.

*Retired Officers* and *National Association of Retired Federal Employees.*

While there may not exist a strong privacy interest in information like names, addresses, and telephone numbers, an employee's interest in maintaining the privacy of his social security number clearly does invoke a high privacy interest.

The Third Circuit held that the privacy exclusion of the FOIA prohibited disclosure of social security numbers:

> We consider first whether the Social Security numbers of M & K's [M & K Electrical Company] employees fall under Exemption 6. The employees have a strong privacy interest in their Social Security numbers. Congress has recognized this privacy interest by making unlawful any denial of a right, benefit, or privilege by a government agency because of an individual's refusal to disclose his Social Security number. Privacy Act of 1974, Pub.L. 93–579, § 7, 88 Stat. 1896, 1909 (1974), *reprinted in* 5 U.S.C.a § 552a note (1982). \* \* \* Against this privacy interest, the Union [I.B.E.W.] has offered no public interest that would be furthered by the release of the Social Security numbers. *I.B.E.W. Local U. No. 5 v. U.S. Dep't of HUD*, 852 F.2d 87, 89 (3rd Cir.1988).

In the instant case, Plaintiff has presented no evidence or legal argument supporting its alleged need for worker's Social Security numbers.

b. Public Interest

Plaintiff in the instant case asserts as the counterbalance to Defendants' claim of the privacy interests of painting contractors' employees in keeping their names, addresses, and social security numbers from disclosure to Plaintiff, the public's interest in assuring compliance with Davis–Bacon. *International Brotherhood of Electrical Workers, Local 41 v. U.S. Dept. of H. & U. Dev.*, 593 F.Supp. 542 (D.C.C. 1984),[5] in an analogous factual situation,

held that the strong public interest in assuring compliance with the Copeland Anti–Kickback and other prevailing wage laws tilted the balance in favor of disclosure of the names of eight employees listed on certified payroll reports submitted to the Department of Housing and Urban Development by a nonunion electrical contractor. *Id.* at 545.

The Third Circuit has specifically upheld disclosure of payroll records containing, *inter alia,* the employee's names and home addresses when balanced against the public policy of ensuring compliance with the Davis–Bacon Act:

> On balance, we conclude that in light of the presumption in favor of disclosure, the release of the names and addresses of M & K's employees is not barred by Exemption 6. The public interest in ensuring compliance with the Davis–Bacon Act is strong and the privacy interest in the names and addresses are not particularly compelling ... thus the invasion of privacy is not clearly unwarranted. *I.B. E.W. Local 5*, 852 F.2d at 92.

It is apparent, therefore, that disclosure of contractor payroll records does serve a significant public interest in monitoring compliance with the Davis–Bacon Act.

Further support for Plaintiff's claim that the balance of public interest concerns versus right to privacy concerns tips in favor of disclosure, is provided by California and Hawaii statutes that require disclosure of the very information sought by Plaintiff in the instant case for contractors working on state and local public works projects.

In light of the foregoing, Defendant has not met its burden of proving that disclosure of names, addresses, and other less personal information contained in the requested payroll records constitutes a clearly unwarranted invasion of personal privacy. The employees' modest privacy interest in preventing disclosure of such information when balanced against the significant public interests in monitoring compli-

---

5. Although *I.B.E.W. Local 41,* as well as *I.B.E.W. Local U. No. 5 v. U.S. Dept. of HUD,* 852 F.2d 87 (3rd Cir.1988), are both pre-*Reporters Committee* cases, their analysis of the public interest involved in monitoring compliance with prevailing wage laws survives the Supreme Court's decision in *Reporters Committee.*

ance with the Davis–Bacon Act tips decidedly in favor of disclosure.

On the other hand, disclosure of employees' social security numbers does invoke significant privacy concerns. In the absence of any evidence whatsoever that the social security numbers are necessary in order to accomplish Plaintiff's laudable goal of monitoring compliance with Davis–Bacon, the balance tips decidedly in favor of nondisclosure. It follows that disclosure of social security numbers would constitute a clearly unwarranted invasion of personal privacy. It is the holding of this Court, therefore, that Exemption 6 does provide for nondisclosure of social security numbers.

There remaining no genuine issues of material fact, Plaintiff's motion for summary judgment is hereby granted as to the issue of whether the requested payroll records are nondisclosable pursuant to Exemption 6. Should Plaintiff ultimately prevail on its underlying cause of action, with the result that this Court issues an order requiring disclosure of the requested records, such order shall require Defendant to edit the employees' Social Security numbers from the requested payroll records.

*Exemption 7(C)*

■ This section does not apply to matters that are—

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, Title 5 U.S.C. § 552(b)(7)(C) (as amended 1986).

The advantage of Defendant arguing application of Exemption 7(C) to Plaintiff's request for payroll records is that Exemption 7(C) includes broader exemption language than does Exemption 6. Under the former exemption, requested information is nondisclosable only if such records constitute a "clearly unwarranted invasion of personal privacy." Under the latter exemption, requested information is nondisclosable where such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

Defendant has two formidable hurdles to its prevailing under Exemption 7(C). First, Defendant must demonstrate that the requested payroll records were compiled for law enforcement purposes. Second, Defendant must demonstrate that the balance of private versus public interests under the analysis of Exemption 6 was so close that the absence of the modifier "clearly" in Exemption 7 would tilt that balance in favor of non-disclosure.

Defendant contends that contractor payroll records, compiled for the purpose of ensuring enforcement of the provisions of Davis–Bacon, constitute records "compiled for law enforcement purposes" within the meaning of Exemption 7(C).

■ It is apparent that Exemption 7 applies equally to records compiled for enforcement of both civil and criminal laws. *See e.g., Rural Housing Alliance v. United States Dept of Agriculture,* 498 F.2d 73, 81 n. 46 (D.C.Cir.1974) ("The character of the statute violated would rarely make a material distinction, because the law enforcement purposes protected by exemption 7 include both civil and criminal purposes").

■ It is also apparent that the records of agencies other than traditional law enforcement agencies, *e.g.,* police departments and their federal counterparts, are potentially excluded under Exemption 7. The District of Columbia Circuit recently held that records compiled by the Postal Service during an investigation of abuse of third-class mail were exempt from disclosure under Exemption 7. *Birch v. U.S. Postal Service,* 803 F.2d 1206 (D.C.Cir. 1986).[6] Nevertheless, the *Birch* panel warned that:

[I]t is important to distinguish an agency serving principally the cause of criminal law enforcement from one having an ad-

---

**6.** *Birch* was decided prior to the 1986 amendment of Exemption 7 which removed the requirement that in order to be nondisclosable,

records must have been compiled by the government agency for the purposes of an investigation.

mixture of law enforcement and administrative functions. * * * [T]his court and others have recognized the need to differentiate the criteria guiding the threshold decision on Exemption 7 claims on the basis of the primary mission the agency pursues. *Birch*, 803 F.2d at 1209.

The appellate court concluded that the United States Postal Service is such a mixed-function agency having both law enforcement and administrative functions and that the primary mission of the Postal Service qualified it for protection under Exemption 7.

Under Federal Acquisition Regulations, 48 C.F.R. §§ 22.000–22.408, the Air Force is "responsible for ensuring the full and impartial enforcement of labor standards in the administration of construction contracts." 48 C.F.R. § 22.406–1(a). Like the Postal Service, therefore, it is possible that the Air Force may qualify as a mixed-function agency with a primary mission that qualifies some of its records for Exemption 7 protection from disclosure. A mixed-function agency, however, was defined in *Birch* as one having law enforcement and administrative functions. The monitoring by the Air Force of payroll records to ensure compliance with the Davis–Bacon Act, however, may constitute no more than an administrative function. Thus, it is possible that the Air Force does not qualify as even a "mixed-function" agency. Moreover, whether the primary mission of the Air Force is that of ensuring compliance with Davis–Bacon is another issue on which Defendant has not met its burden of proof.

Finally, Judge Robinson's caveat in *Birch* does not go unnoticed by this court:

> We realized that application of a broad or imprecise construction of this provision [Exemption 7] to such an agency could "swallow [ ] up" FOIA and undercut its central goal of public access, since any routine monitoring "conceivably could re-

sult" in imposition of penalties. *Birch*, 803 F.2d at 1209.

It is the conclusion of this Court that it is neither necessary nor in concert with considerations of judicial restraint for this Court to decide whether contractor payroll records kept by the United States Air Force in order to monitor compliance with the Davis–Bacon Act constitute records compiled for law enforcement purposes. This conclusion is based upon the Court's decision to grant Plaintiff's motion for summary judgment as to the applicability of Exemption 7 on other grounds. The balance of private versus public interests under the analysis of Exemption 6 was not so precariously close that the absence of the modifier "clearly" in Exemption 7 would now tilt that balance in favor of non-disclosure.

Assuming arguendo that contractor payroll records kept by the United States Air Force in order to monitor compliance with the Davis–Bacon Act do constitute records compiled for law enforcement purposes, thereby qualifying such records for possible nondisclosure under Exemption 7, it is the decision of this Court that disclosure of such records, once having been expunged of employee social security numbers, would not reasonably be expected to constitute an unwarranted invasion of personal privacy.[7]

### CONCLUSION

In accordance with the foregoing, Defendant's motion for summary judgment is denied as to all exemptions to Title 5 U.S.C. § 552. Plaintiff's motion is partially granted and partially denied. As to Exemption 4, Plaintiff's motion is denied because there exists a genuine issue of material fact as to whether disclosure of contractor payroll records is likely to cause substantial harm to the competitive position of the contractor from whom the information was obtained.

On the other hand, Defendant has not met its statutory burden of proving that the requested information is clearly exempt

---

**7.** See the discussion above concerning balancing of relevant privacy and public disclosure interests relative to Exemption 6.

from disclosure pursuant to Exemptions 6 or 7. As to Exemption 6, Plaintiff's motion for summary judgment is hereby granted because once the employees' social security numbers have been expunged from the payroll records, the balance of public interest concerns versus right to privacy concerns tips decidedly in favor of disclosure. As to Exemption 7(C), Plaintiff's motion for summary judgment is also granted because even if the subject contractor payroll records constitute records compiled for law enforcement purposes, the balance of public interest concerns versus right to privacy concerns tips decidedly in favor of disclosure of payroll records from which social security numbers have been expunged.

As stated above, should Plaintiff ultimately prevail on its underlying cause of action, with respect to Exemption 4, with the result that this Court issues an order requiring disclosure of the requested records, such order shall require Defendant to edit the employees' Social Security numbers from the requested payroll records.